IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: CHAPARRAL ENERGY, INC., *et al.*, | ) Chapter 11 |
| | ) Bankr. No. 16-11144 (LSS) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| CHAPARRAL ENERGY, L.L.C., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) C.A. No. 17-701 (MN) |
| | ) |
| NAYLOR FARMS, INC. and HARREL'S LLC, | ) |
| | ) |
| Appellees. | ) |

## **MEMORANDUM OPINION**

Mark D. Collins, John H. Knight, Richards, Layton & Finger, P.A., Wilmington, DE; Richard A. Levy, Keith A. Simon, Christopher Harris, Latham & Watkins LLP, New York, NY – Attorneys for Appellant

Seth Niederman, William H. Stassen, Dana S. Katz, Fox Rothschild LLP, Wilmington, DE – Attorneys for Appellees.

September 24, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arose in the Chapter 11 cases of debtor Chaparral Energy, LLC ("Chaparral") and certain affiliates (together, "Debtors"). Before the Court is an appeal by Chaparral from the Bankruptcy Court's May 24, 2017 Memorandum Order ("Memorandum Order"), *In re Chaparral Energy, Inc.,* 571 B.R. 642 (Bankr. D. Del. 2017), regarding proof of claim no. 2179 (CHAP446-86)[1] ("Class Claim") filed by Naylor Farms, Inc. and Harrel's LLC ("Class Plaintiffs"), on behalf of themselves and all others similarly situated (collectively, "the Class"). Chaparral seeks a reversal of the Bankruptcy Court's decision to grant Class Plaintiffs' request that Federal Rule of Bankruptcy Procedure 7023 be made applicable to the Class Claim.[2] For the reasons set forth herein, the Memorandum Order is affirmed.

## I. BACKGROUND

### A. Oklahoma Class Action and Class Claim

The following facts are undisputed. On May 9, 2016 ("Petition Date"), the Debtors, including Chaparral, commenced the Chapter 11 cases. Almost 5 years prior, on June 7, 2011, the Class Plaintiffs filed their class action complaint against Chaparral in the United States District Court for the Western District of Oklahoma (the "Oklahoma District Court").[3] The Oklahoma

---

[1] The docket of the Chapter 11 cases, captioned *In re Chaparral Energy Inc.,* Case No. 16-11144-LSS (Bankr. D. Del.) is cited herein as "B.D.I. __." The appendix filed in support of Chaparral's opening brief (D.I. 14-18) is cited herein as "CHAP__," and the appendix filed in support of Class Plaintiffs' answering brief (D.I. 22) is cited herein as "CLASS__."

[2] Class proofs of claim cannot be filed automatically because application of Federal Rule of Civil Procedure 23 is limited to adversary proceedings. FED. R. BANK. P. 7023 ("Rule 23 F. R. CIV. P. applies in adversary proceedings."). Bankruptcy Rule 9014(c), however, permits a bankruptcy court, in its discretion, to apply Bankruptcy Rule 7023, which incorporates Federal Rule of Civil Procedure 23, to other proceedings, such as a class proof of claim.

[3] *Naylor Farms, Inc. & Harrel's LLC, v. Chaparral Energy, LLC*, Case No. 5-11-cv-00634-HE in the Oklahoma District Court ("Oklahoma Class Action"). (CHAP0935, ¶ 1).

Class Action seeks, *inter alia*, recovery of unpaid royalties owed to the Class, which is comprised of royalty owners with mineral interests located in the State of Oklahoma, based on Chaparral's alleged failure to properly report, account for, and distribute royalty interest payments to the Class, dating back to December 1, 1999.  (CHAP11, CHAP1108).  In particular, Class Plaintiffs in that case allege that Chaparral improperly charged or deducted from royalties certain costs that Chaparral was required to absorb under Oklahoma law.

On October 13, 2015, Class Plaintiffs moved for class certification ("the Class Certification Motion") in the Oklahoma District Court.  Approximately six months after the Class Certification Motion was filed, and while the motion was fully briefed and under consideration by the Oklahoma District Court, Chaparral filed its Chapter 11 petition.  On June 13, 2016, Chaparral filed a motion for entry of an order establishing bar dates (CHAP159-205) ("Bar Date Motion"), which the Bankruptcy Court granted on July 1, 2016 (CHAP206-230) ("Bar Date Order").  In the Bar Date Motion, Chaparral represented that it would serve all known creditors with notice of the bar date. (CHAP168, ¶ 13(a)).  The Bar Date Motion requested the claims bar date in the Chapter 11 Cases to be set for August 12, 2016 ("the Bar Date").  (CHAP162).  The Bar Date Order required that Chaparral serve notice of the Bar Date on Chaparral's creditors including Class Plaintiffs and Class: "all known potential Claimants and their counsel (if known)," "all known parties to litigation with the Debtors," and "all known Royalty Interest Owners."  (CHAP211).  The Bar Date Order further provided for publication notice of the Bar Date in "The Wall Street Journal (national edition) and *The Oklahoman*, and such other local newspapers, trade journals or similar publications, if any, as the Debtors deem appropriate . . . ."  (CHAP212).  On July 12, 2016, Chaparral filed the Notice of Deadline for the Filing of Proofs of Claim, Including for Claims Asserted under Section 503(b)(9) of the Bankruptcy Code ("the Bar Date Notice").  (CHAP231-

37). The Bar Date Notice was addressed to "ALL POTENTIAL HOLDERS OF CLAIMS AGAINST THE DEBTORS (AS LISTED BELOW)." (CHAP0231). Relevant to this appeal, Chaparral served the Bar Date Notice on a subset of the Class that included "known royalty interest owners to whom [the Debtors] had made royalty payments within the three years prior to the [Bankruptcy] Petition Date." (CHAP944, ¶ 19).

On July 22, 2016, Class Plaintiffs filed a motion seeking limited relief from the automatic stay pursuant to § 362(d) to authorize the Oklahoma District Court to determine the Class Certification Motion, which had been stayed by the Chapter 11 cases. (CHAP238-465). Chaparral stipulated to limited relief from stay to allow the Class Certification Motion to proceed in the Oklahoma Class Action (CHAP487-98), and the Bankruptcy Court approved this resolution on August 16, 2016 (CHAP499-501). On January 17, 2017, the Oklahoma District Court entered an Order granting the Class Certification Motion, with certain modifications, including, *inter alia*, that the Class was restricted to leases with "Mittelstaedt Clauses." (CHAP0502-522). The effect of this is that the Class is now comprised of approximately fifty percent (50%) of the leases originally included in the Class description.[4]

### B. Claim Objection and Plan

In order to protect the interests of the Class, Class Plaintiffs filed the Class Claim on August 15, 2016. (CHAP466-86). At the time of filing of the Class Claim, it was estimated that

---

[4]     The Oklahoma District Court recognized that the class definition would need to be modified to specify the class period. On April 17, 2017, the Class Plaintiffs stipulated to limit the period for its Class Claim in the Oklahoma Class Action to June 1, 2006. Class Plaintiffs assert that stipulation does not bind royalty owners that do not have "Mittelstaedt Clause" leases. Class Plaintiffs assert that these royalty owners may have claims that go back to the late 1990s as they may have statute of limitations tolling arguments. (*See* D.I. 21 at n.3 (citing cases)). Class Plaintiffs further assert that those royalty owners' damages could be substantial because Oklahoma law provides for 12% annual compounded interest on underpayment of royalty damages. (*See id.* (citing statute)).

the Class Claim was in excess of $150 million, inclusive of actual and punitive damages, 12% statutory interest, costs and attorneys' fees. (CHAP471). Class Plaintiffs subsequently amended the Class Claim to $90 million. (CHAP1101-52).

Chaparral did not immediately object to the Class Claim and continued to move ahead with confirmation of a plan. On December 19, 2016, Chaparral filed the first Amended Plan of Reorganization (as amended, "the Plan"). (CHAP1891-1966). Under the Plan, the Class Claim, along with holders of Prepetition Note Claims and General Unsecured claims, receive their *pro rata* share of the equity in the reorganized companies. This accounts for approximately 7% of equity of the reorganized company for Class Plaintiffs. (CHAP1102; CHAP2213).

On January 26, 2017 – nine days after the Class was certified by the Oklahoma District Court and five months after the Class Claim was filed – Chaparral filed the Claim Objection, asserting that the Bankruptcy Court should exercise its discretionary authority by refusing to permit the filing of the Class Claim because it would not be beneficial to apply Bankruptcy Rule 7023. The Debtors reserved for future adjudication the question of whether the Class Claim actually satisfies the requisites of Federal Rule of Civil Procedure 23,[5] as well as additional objections on any other basis. According to Class Plaintiffs, they were informed for the first time in the Claim Objection of Chaparral's limited service of the Bar Date Notice based on the three-year prepetition cut-off period. (CHAP933-1033). On February 15, 2017, Class Plaintiffs filed their response to the Claim Objection. (CHAP1040-1100). On February 28, 2017, the Bankruptcy Court held an evidentiary hearing on the Claim Objection and heard oral argument. (CHAP1757-1890). According to testimony of Chaparral's associate vice president of legal, associate general

---

[5]     "Civil Rule 23 factors do not become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion." *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012).

counsel, and corporate secretary, Ms. Byford, Chaparral served approximately 76% of the royalty interest owners it would have served had it employed a ten year prepetition cut off period. (CHAP1770:7-19). The Bankruptcy Court took the Claim Objection under advisement.

On March 9, 2017, the confirmation hearing for the Plan was held. (CHAP0531). At the confirmation hearing, no party suggested that the Plan could not be confirmed or could not go effective because of this outstanding issue. On March 10, 2017, the Plan was confirmed, and on March 21, 2017, the Plan went effective. (CHAP2187).

### C. Memorandum Order

On May 24, 2017, the Bankruptcy Court issued the Memorandum Order determining that Bankruptcy Rule 7023 should be applied to the Class Claim and denying the Claim Objection. *Chaparral*, 571 B.R. at 650. Noting that whether to permit a class action proof of claim is a matter of discretion, the Bankruptcy Court identified the two-step analysis: "First, the Court must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process." *Id.* at 646 (citing *In re Pac. Sunwear of California, Inc.*, 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016), *reconsideration denied*, 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016)). "Second, the court must determine whether the requirements of Federal Rule 23 have been satisfied, such that a class proof of claim may properly be filed." *Id.* (citing *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014) and *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011).

Noting that the issue addressed in the Memorandum Order was solely the first step of the analysis – whether to apply Bankruptcy Rule 7023 – the Bankruptcy Court identified the well-recognized three-factor framework set forth in *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007), to guide the court's discretion in determining whether Bankruptcy Rule

7023 should be extended to the claims administration process: (1) whether the class was certified prepetition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate ("*Musicland* factors"). The Bankruptcy Court noted that exercise of its discretion is clearly a fact and case specific analysis and that no single one of the *Musicland* factors is dispositive. *Chaparral*, 571 B.R. at 646.

Because the class was not certified prepetition, the Bankruptcy Court concluded that the first *Musicland* factor weighed against application of Bankruptcy Rule 7023. *Id.* The remaining factors, however, weighed in favor of application. The Bankruptcy Court determined that the second *Musicland* factor – whether the members of the putative class received the notice of the bar date – weighed in Class Plaintiffs' favor "as not all putative class members were served with notice of the bar date." *Id.* at 646-47. With respect to the third *Musicland* factor – whether class certification will adversely affect the administration of the estate – the Bankruptcy Court determined that most of Chaparral's original arguments had been mooted by its determination to go forward with confirmation and consummation of the Plan, including Chaparral's argument that permitting the Class Claim would "creat[e] significant uncertainty with respect to the recovery available for unsecured creditors." *Id.* at 648-49. The Bankruptcy Court further disagreed with Chaparral's assertion that the delay associated with reserving 7% of new equity interests for putative class claimants would adversely affect the administration of the estate. *Id.* at 649. As an additional reason weighing in favor of application of Bankruptcy Rule 7023, the Bankruptcy Court noted that, assuming the Class Claim is well founded – including its "allegation that Chaparral is improperly reporting, accounting for, and distributing royalty interest payments to Royalty Interest Owners" – permitting the filing of a Class Claim could potentially serve as a deterrent, "dissuading

the reorganized companies from continuing with the same behavior." *Id.* at 650 (citing *In re Zenith Labs., Inc.*, 104 B.R. 659, 662 (D.N.J. 1989)).  Based on its thorough weighing of the *Musicland* factors and a fact and case specific analysis, the Bankruptcy Court exercised its discretion to apply Bankruptcy Rule 7023 to the Class Claim.  *Id.*

        **D.**       **Appeals**

Thereafter, on June 7, 2017, Chaparral timely appealed the Memorandum Order, and briefing proceeded in this Court.  (D.I. 1).  Weeks earlier, on April 28, 2017, Chaparral appealed the Class Certification Order entered by the Oklahoma District Court to the United States Court of Appeals for the Tenth Circuit.  The appeal of the Class Certification Order was argued before the Tenth Circuit on March 20, 2018.

On October 3, 2018, the parties were ordered to submit a joint status report with respect to its appeal in this Court.  (D.I. 27).  In the Joint Status Report filed by the parties (D.I. 28), Chaparral took the following position: "Appellant believes that while the confirmation of the class certification would not bind the Bankruptcy Court or this Court with respect to the application of Rule 7023 . . ., the denial of class certification would be highly probative in this Appeal" and that "it may be more efficient to defer resolution of this Appeal until a decision is rendered in the Tenth Circuit Appeal."  (*Id*. at 2).  Class Plaintiffs disagreed.  (*Id*. at 2-3).  On May 3, 2019, the Tenth Circuit issued its Opinion and corresponding judgment affirming the Oklahoma District Court's Class Certification Order.  (D.I. 29).

The appeal is fully briefed.  (D.I. 13, 21, 24).  The docket reflects that oral argument was not requested by any party.

## II.    JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  In reviewing the bankruptcy court's determinations, this Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof."  *See In re Trans World Airlines, Inc*., 145 F.3d 124, 130 (3d Cir. 1998) (internal quotations and citations omitted).  The Court reviews the Bankruptcy Court's decision to apply Bankruptcy Rule 7023 to the Class Claim for abuse of discretion.  Abuse of discretion exists upon clearly erroneous finding of fact, errant legal conclusions, or improper application of fact to law.  *SGL Carbon*, 200 F.3d at 159.  "An abuse of discretion can occur when no reasonable person would adopt the [lower] court's view."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990).

## III.    ANALYSIS

Chaparral asserts that the Bankruptcy Court erred as a matter of law by (1) weighing the third *Musicland* factor more heavily than the first two factors when the applicable case law is the opposite; (2) finding that Chaparral failed to serve class members and holding that bar date notice issues were sufficient to require class certification; and (3) relying on potential deterrence as a factor weighing in favor of exercising discretion.  (D.I. 13 at 9).  According to Chaparral these errors infected the Bankruptcy Court's discretionary application of Bankruptcy Rule 7023, and its determination that administration of the estate will in no way be adversely impacted was an abuse of discretion.  Conversely, Class Plaintiffs argue that the cases cited by Chaparral are distinguishable because those cases involved class claimants who waited until after a plan had been confirmed to raise the class certification issue for the first time, causing surprise, delay, and harm to the estate.  These circumstances are not present here, and, according to Class Plaintiffs,

there are no grounds to find that the Bankruptcy Court abused its discretion where Debtors were aware of Class Plaintiffs' claim for years prior to filing the Chapter 11 cases and where Chaparral did not object to Class Plaintiffs' efforts to pursue class certification.

As an initial matter, Chaparral argues throughout that the Bankruptcy Court's analysis ignored various bankruptcy policy considerations that conflict with class treatment, as well as case law holding that class treatment is generally inappropriate where, as in this case, the putative class was not certified prepetition and the putative class members received notice of the bar date. (*See* D.I. 13 at 9-10). Clearly there is no requirement that the Bankruptcy Court set forth in every decision an exhaustive summary of policy considerations underlying the application of Rule 23 to a proof of claim. While not discussed at length in the Memorandum Order, the Court agrees with Chaparral that careful consideration of the *Musicland* factors is always necessary because bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action, and thus class certification may be less desirable in bankruptcy than in ordinary civil litigation. *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005); *Bally Total Fitness Center of Greater New York, Inc*., 402 B.R. 616, 620-21 (Bankr. S.D.N.Y. 2009). This is because, in many cases, the bankruptcy case itself may provide the same or greater procedural advantages as a class action.[6] The determination, however, will always require a fact

---

[6]     The *Musicland* court noted that bankruptcy provides the same or greater procedural advantages than a class action does:

> Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice. Furthermore, claims are "deemed allowed" under § 502(a) in the absence of an objection, in which case discovery and fact-finding are avoided altogether. Finally, where the debtor is liquidating and its managers have moved on to other jobs, the class action does not serve a deterrent effect.

*Musicland*, 362 B.R. at 651, n.8.

and case specific analysis, and whether to apply Bankruptcy Rule 7023 is committed to the sound discretion of the Bankruptcy Court.

As stated in *Motors Liquidation*, "'[a]lthough the Bankruptcy Code and Rules give no express guidance for the court's exercise of this discretion, a pervasive theme is avoiding undue delay in administration of the case.'" *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (quoting *Ephedra*, 329 B.R. at 5). The Bankruptcy Court's analysis gives proper consideration to the effect application of Bankruptcy Rule 7023 will have on administration of the estate and is consistent with assuring that "the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy." *Musicland*, 362 B.R. at 651.

A.      **Weighing of *Musicland* Factors**

As the Bankruptcy Court noted at the outset of its analysis of the *Musicland* factors, "[n]o one factor is dispositive." *Chaparral,* 571 B.R. at 646. Chaparral argues that the first two *Musicland* factors – prepetition class certification and notice of bar date – should be afforded the most weight. (D.I. 13 at 13-18). Chaparral argues that many courts have found failure to certify a class prepetition is "generally fatal." (*Id*. at 17). The case law relied upon by Chaparral, however, simply recites that a class claim is inappropriate when the first two *Musicland* factors have been met. *Musicland,* 362 B.R. at 655 (noting that the "first two considerations . . . are critical"). This is not inconsistent with the Bankruptcy Court's reasoning, as it determined that other factors weighed in favor of application.

Chaparral further argues that the Bankruptcy Court erred in "relying on the third *Musicland* factor more heavily that the first two factors when the applicable case law is the opposite." (*See id.* at 9; 29-37). The Court sees no support in the Memorandum Opinion for Chaparral's argument that the Bankruptcy Court ascribed greater weight to the third *Musicland* factor. In

accordance with the *Musicland* analysis, the Bankruptcy Court determined that (1) while prepetition certification was not obtained, this was not dispositive of the application of Bankruptcy Rule 7023 (*Chaparral*, 571 B.R. at 646); (2) that certain putative class members were not served with notice of the bar date (*id.* at 648); and (3) as to whether class certification will adversely affect administration of the estate, the Bankruptcy Court determined "here it will not" (*id.* at 648). On balance, the Bankruptcy Court determined that the factors weighed in favor of application of Bankruptcy Rule 7023. The Court sees no indication in the Memorandum Opinion that the Bankruptcy Court gave greater weight to the third *Musicland* factor or to any other factor.[7]

Even if the Bankruptcy Court had ascribed greater weight to this factor, Chaparral cites no authority requiring the factors to be weighed equally or indicating that the Bankruptcy Court should have applied a particular formula in its analysis. Rather, cases support Class Plaintiffs' argument that "the determination of whether to extend Rule 7023 to a class claim and the weight given to different elements of such determination, is firmly rooted in the discretion of the bankruptcy court." *See In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. at 620 ("courts may exercise their discretion to extend FRCP 23 to allow the filing of a class proof of claim . . . in determining whether to exercise this discretion, courts *primarily* look at [various

---

[7]     In support of its contention that the Bankruptcy Court "focus[ed] primarily on the third factor," at the expense of the first two factors, Chaparral cites the Bankruptcy Court's statement at the outset of the analysis: "Here, where the Court determines that the ***administration of the estate will in no way be adversely impacted,*** the Court will exercise its discretion to apply Bankruptcy Rule 7023." (D.I. 24 at 16 (quoting *Chaparral*, 571 B.R. at 646) (emphasis added)). The Bankruptcy Court, however, continues, "Each of the factors is discussed in turn" and proceeds with the *Musicland* analysis. *Id.* The point of the *Musicland* analysis is to determine "***whether it is beneficial to apply Bankruptcy Rule 7023 . . . to the claims administration process***." *Pac Sunwear*, 2016 WL 3564484, *5 (emphasis added). Thus, the statement is consistent with framing the Bankruptcy Court's ultimate conclusion; it precedes any discussion of the *Musicland* factors or other analysis, and as previously stated, there is no other support for Chaparral's insistence that the third *Musicland* factor was given inappropriate weight in the analysis.

factors]"); *In re Blockbuster Inc.*, 441 B.R. 239, 240 (Bankr. S.D.N.Y. 2011) (". . . a bankruptcy court may, in its discretion, allow the filing of class [claims]").

### C.    First *Musicland* Factor

Chaparral argues that the Bankruptcy Court committed an error in determining that the first *Musicland* factor – prepetition class certification – "was not important." (D.I. 13 at 17). The Memorandum Opinion reached no such conclusion. The Bankruptcy Court properly determined that this factor weighed against application of Bankruptcy Rule 7023. *Chaparral*, 571 B.R. at 646 (noting "[n]onetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances.") Indeed, the case law cited by the Bankruptcy Court demonstrates the failure to satisfy the first factor is not dispositive.

Chaparral argues that two of the cases cited by Bankruptcy Court are distinguishable as employee class proofs of claim based on the WARN Act and unpaid vacation claims that were precipitated by the bankruptcy itself. (D.I. 13 at 17). In such cases, Chaparral correctly argues, prepetition certification loses its relevance because there will seldom be time to file a class action complaint and certify the class before the petition date; strict application of this factor would foreclose WARN Act classes in virtually all bankruptcy cases. (*Id.* (citing *MF Global,* 512 B.R. at 763 and *Schuman v. The Connaught Grp., Ltd.* (*In re The Connaught Grp., Ltd.*), 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013)). The Bankruptcy Court distinguished these cases on the same basis in the Memorandum Order, *Chaparral,* 571 B.R. at 646 n.11, but cited various cases for the proposition that a class not being certified prepetition does not, alone, require denial an application of Bankruptcy Rule 7023. The WARN Act cases underscore the importance of a case-specific analysis as opposed to a formulaic application of the *Musicland* factors. Chaparral cites no case

holding that the first factor is dispositive[8] or that the Bankruptcy Court's analysis should have

ended with the first factor. As the *Musicland* factors are a framework for the Bankruptcy Court's

discretionary determination, it arguably would have been an abuse of discretion to end the analysis

there.[9] Here, the Bankruptcy Court acted within its discretion in finding that the fact that the Class

was not certified until after the voluntary petition had been filed was not alone determinative in

whether Bankruptcy Rule 7023 should be applied.

### D.  Second *Musicland* Factor

With respect to the second factor – "whether the members of the putative class received

notice of the bar date," *Musicland*, 362 B.R. at 654 – Chaparral argues that the Bankruptcy Court

erred in finding that Chaparral failed to serve **all "known" creditors**. (D.I. 13 at 9). The

Bankruptcy Court determined that this factor weighed in Class Plaintiffs' favor "as not **all putative**

---

[8]    Class Plaintiffs argue that Chaparral waived any argument with respect to the first *Musicland* factor when Chaparral stipulated to stay relief and allowed the Class Certification Motion to proceed in the Oklahoma District Court. (*See* D.I. 21 at 9). According to Chaparral, any waiver argument "is expressly contradicted by the fact that the Debtors expressly reserved their right to object to the Class Proof of Claim under Bankruptcy Rule 7023 when agreeing to lift the automatic stay." (D.I. 24 at 4). Additionally, Chaparral argues that Class Plaintiffs cite no cases finding that lifting the automatic stay to allow determination of Rule 23 issues constitutes a waiver. (*Id.*) Without considering the validity of such an argument absent such a reservation, the record reflects Chaparral's reservation of rights (CHAP1169-70; CHAP213), and the waiver argument is rejected.

[9]    Additionally, the Court agrees with Class Plaintiffs (D.I. 21 at 12) that the cases cited by Chaparral, to bolster its argument that prepetition class certification is necessary, are distinguishable from the present facts. *See Musicland*, 362 B.R. at 649 (claimants did not file the motion for certification until seven months *after* the bar date); *see Blockbuster*, 441 B.R at 242 (the proposed class moved for the application of Bankruptcy Rule 7023 despite the fact that the class had previously been *decertified* by another court which had determined that the proposed class could not meet the requirements of Rule 23); *Bally Total Fitness*, 402 B.R. at 618-19 (although claimants had filed class action suits in California state court, it does not appear that motions for certification had been filed in those actions); *see In re Sacred Heart Hospital of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) (class action suit had only been commenced in state court two days before bankruptcy petition).

***class members*** were served with notice of the bar date" based on the Debtors' adherence to an arbitrary, three-year prepetition cut-off period to determine which creditors should receive the Bar Date Notice. *Chaparral*, 571 B.R. at 646-47 (emphasis added). Chaparral's arguments on appeal focus on whether the putative class members were known or unknown creditors entitled to receive actual or publication notice and whether Debtors did what was reasonable under the circumstances to provide notice to ascertainable creditors. (*See* D.I. 13 at 18-29; D.I. 24 at 5-13). Pursuant to paragraph 15 of the Bar Date Order, the Debtors were required to provide notice of the Bar Date to all known "Royalty Interest Owners," which meant only the current owners of "Royalty Interests." The Debtors assert that they went beyond the express requirements of the Bar Date Order and provided actual notice of the Bar Date to all known royalty interest owners to whom they had made royalty payments within the three years prior to the Petition Date. As a result, the Debtors argue, they provided actual notice of the Bar Date to over 35,000 current and former royalty interest owners. The Bar Date Order, however, also required service on parties to litigation with the Debtors, and the inquiry here is not focused on whether Chaparral complied with the Bar Date Notice or laws requiring notice to creditors. As Chaparral a correctly points out, the inquiry is focused on "whether any notice issues are sufficient to require that the class motion be granted." (*Id*. at 18 (quoting *In re Northwest Airlines Corp*., 2007 Bankr. LEXIS 5114, at *12 (Bankr. S.D.N.Y. Sept. 26, 2007)).

The Bankruptcy Court's determination as to the second *Musicland* factor was largely based on direct testimony of the Debtors' witness regarding the Debtors' decision-making process in determining who should be served with the Bar Date Notice, which testimony established that: (1) Debtors employed a three-year cut-off period from the Petition Date across all creditor groups (*see* Hr'g Tr. at 9:15-20); (2) Debtors picked the three-year prepetition cut-off period to be

consistent across all creditor groups (*see id.* at 10:21-11:23; *see also id.* at 26:10-17 ("We were trying to do something that was uniform three years across all categories. We were trying to do something manageable. We were trying to do something reasonable . . ."); (3) Debtors provided notice to all Royalty Interest Owners who received payment in the three years prior to the Petition Date (*id.* at 10:5-9); (4) Debtors had information available from a ten-year prepetition period, which included all Royalty Interest Owners who had received payments since January 2007 (*id.* at 12;12-14:19; 61:17-63:7); (5) analysis indicated that, by applying the three-year prepetition cut-off period, the Debtors served approximately 76% of the Royalty Interest Owners that would have been served had a ten-year prepetition cut-off period been applied (or 81% by discounting those Royalty Interest Owners who interests had escheated back to the state (*id.* at 15:15-18:10); and (6) that the Debtors have the names and addresses of all Royalty Interest Owners that Chaparral has paid money to since at least 1999 (*id.* at 48:16-24).

The Bankruptcy Court determined that adherence to a rigid uniform three-year cut-off period to determine who to serve was not appropriate where, as here, the class action litigation commenced five years earlier. *Chaparral*, 571 B.R. at 647. Given that "the Putative Class Plaintiffs filed the Oklahoma Class Action on June 7, 2011," and "Debtors acknowledged a five year statute of limitations for the claims asserted in the Oklahoma Class Action," the Bankruptcy Court determined that Chaparral "should have at the very least served the bar date notice on Oklahoma Royalty Interest Owners who received payments going back to June 7, 2006." *Id.*

Chaparral argues that, even based on the inaccurate and overly inclusive assumption that all former royalty owners from June 7, 2006 forward[10] could potentially be part of the Class

---

[10]     Chaparral does not provide a valid justification for why it did not at least expand the cut-off to June 7, 2006, the five year statute of limitations for the claims asserted in the class action. Chaparral cites the changing class definition, but simply because a different class

Definition, it "still provided actual notice to at least 81% of these individuals;" that Chaparral is "willing to extend the bar date" for those creditors that did not receive actual notice; and that "Class Plaintiffs cannot identify a single Class member that did not receive actual notice." (D.I. 13 at 28-29). In these circumstances, Chaparral argues, notice issues were not "sufficient to require that the class motion be granted" and thus "it was an abuse of discretion to hold that the second *Musicland* factor weighs in favor of permitting the Class Proof of Claim." (*Id.* at 28-29 (quoting *Northwest Airlines*, Bankr. LEXIS 5114, at *12)).

In considering whether putative class members received notice of the bar date, the Court finds no error or abuse of discretion in the Bankruptcy Court's determination that Debtors' adherence to a 3-year prepetition cut-off period to determine who would be given actual notice of the bar date presented a "notice issue" with respect to litigation commenced five years earlier under a five-year statute of limitations. Nor is it error or abuse of discretion to conclude that such a notice issue was "sufficient to require that the class motion be granted" and weighed in favor of applying Bankruptcy Rule 7023. *Northwest Airlines*, Bankr. LEXIS 5114, at *12. Where, as Chaparral admits, "the number of individuals who did not receive actual notice might be, at most,

---

definition was ultimately approved after the Bar Date Notice cannot justify serving a subset of the putative claimants. Chaparral acknowledged that it has the class members' information at hand in its books and records, but argues that to conduct an examination of those documents would be overly burdensome. Ms. Byford, however, testified that Chaparral's systems for searching for royalty interest owners are electronically-stored and searchable. (CLASS 19:3-21:10). Chaparral further argued that it would have had to serve several thousand additional entities which may have been overinclusive and the mailing costs of which would have been a waste of resources. As Class Plaintiffs point out, these explanations do not trump a creditor's due process rights. (D.I. 21 at 14). Finally, Chaparral's assertion that Class Plaintiffs have not identified a single Class member that did not receive actual notice of the bar date would inappropriately shift the Debtors' burden.

19% of the Class" (D.I. 13 at 27), the Court cannot conclude that the Bankruptcy Court abused its discretion.[11]

### D.    Third *Musicland* Factor

With respect to the third factor – "whether class certification will adversely affect the administration of the case," *Musicland*, 362 at 654 – the Bankruptcy Court determined that most of the Debtors' original arguments had been mooted by the Debtors' success in going forward with confirmation and consummation of their plan:

> For example, the Debtors argued that: (i) permitting the Class Claim would adversely affect the administration of the estate "by creating significant uncertainty with respect to the recovery available for their unsecured creditors"; (ii) the new equity interests of the reorganized Debtors could not be distributed until after the Claim Objection issues had been resolved; and (iii) the "ongoing uncertainty surrounding the potential recoveries available to unsecured creditors may adversely affect the Debtors' ability to solicit support for their plan." All of this proved to be untrue. The Plan provided treatment as described above for the Putative Class and the treatment did not prove fatal to confirmation or consummation of the Plan. Further, any dilution of recoveries to other unsecured creditors is simply a function of the filing of a claim, not the filing of a class proof of claim. In these circumstances, exercising discretion to apply Bankruptcy Rule 7023 will not adversely impact the estate.

*Chaparral*, 571 B.R. at 648-49 (footnotes and citations omitted). On appeal, Chaparral asserts that "the Bankruptcy Court ignored the adverse consequences to the Debtors' estates in permitting the Class Proof of Claim," including undue delay and prejudice to other creditors. (*See* D.I. 13 at 29-37). Chaparral argues that permitting the Class Claim will undoubtedly delay distributions to

---

[11]    According to Class Plaintiffs, Chaparral's remaining notice argument – that it reasonably believed that the claims of former royalty interest owners were transferred to current owners – is being raised for the first time on appeal. (*See* D.I. 13 at 30). Chaparral has cited no place in the record where this argument was raised below, and accordingly, it is waived. "It is well established that failure to raise an issue in the [court of original jurisdiction] constitutes a waiver of the argument." *In re Handel*, 570 3d Cir. 140, 143 (3d Cir. 2009).

creditors far in excess of any delay caused by permitting additional individual claims and will burden the Debtors' estates with needless expenses. (*See* D.I. 24 at 13-16).

Although the Bankruptcy Court disagreed that Chaparral's concerns supported a determination that administration of the estate would be adversely affected, it cannot be said that the Bankruptcy Court "ignored" those concerns or failed to consider them. The Bankruptcy Court expressly considered "Debtors' assertion that the administration of the estate will be adversely affected by reserving 7% of new equity interests for putative class claimants in the event their claims are ultimately allowed." *Chaparral*, 571 B.R. at 649 (citing *Connaught*, 491 B.R. at 99 ("there are sufficient funds to pay the [class] claims if they are allowed, and [their] allowance will not jeopardize the consummation of the plan")). The Bankruptcy Court considered the Debtors' delay argument as well. *See id*. The Bankruptcy Court noted that Debtors had "divorced the question of whether the Court should exercise its discretion to apply Bankruptcy Rule 7023 from the issue of whether the class claim should be certified under Rule 23." *Id*. Having deferred a final determination on this issue, the Bankruptcy Court viewed the Debtors as hard-pressed to argue that allowing the class claim will significantly delay administration of the estate.

The Court agrees that plan confirmation does not "erase" other negative effects to the estate. With respect to delay, the Court further agrees with Chaparral, and disagrees with the Bankruptcy Court, that the Debtors delayed a final determination on the Class Claim by divorcing the Bankruptcy Rule 7023 and Rule 23 issues. The record reflects that it was Class Plaintiffs who sought to have the Rule 23 issue decided by the Oklahoma District Court, and nothing prevented Class Plaintiffs from bringing a Bankruptcy Rule 9014 motion at the time that they filed their lift stay motion or filed the Class Claim. In sum, the Court cannot conclude the Bankruptcy Court abused its discretion in determining that the third *Musicland* factor weighed in favor of Class

Plaintiffs. Indeed, Chaparral does not set forth any genuine inequitable harms that will resulting from allowance of the Class Claim.

With respect to delay, Chaparral asserts that "approximately 7% of the equity in the Reorganized Debtors is being held in limbo due to the Class Proof of Claim." (D.I. 13 at 31). Apart from its argument that "delaying distributions of 7% of general unsecured creditor recoveries is significantly adverse by any standard," Chaparral does not show how such delay of distributions would negatively impact the estate, given the sufficiency of funds. (*Id*.)

With respect to costs, Chaparral argues that the Class Claim will increase costs beyond what would be required to deal with the five individual claims currently on file. While this assertion is undoubtedly correct, as Class Plaintiffs point out, this argument also assumes sufficient notice, which was not given here. Assuming Chaparral permitted the 19% of creditors who did not receive the Bar Date Notice, arguably many more individual claims would have to be litigated as opposed to one class claim. *See, e.g., Pac Sunwear*, 2016 WL 3564484, *6 ("application of Rule 7023 will not hinder the chapter 11 process, but rather will promote efficiency by placing potentially thousands of individual claims before the court in a single class action with competent counsel representing the interests of the class").

On balance, the Court finds insufficient grounds for abuse of discretion in the Bankruptcy Court's determination that the third *Musicland* factor weighs in favor of Class Plaintiffs.

### E.     Consideration of Deterrent Potential of Class Claim Device

As an additional reason weighing in favor of application of Bankruptcy Rule 7023, the Bankruptcy Court noted that permitting the filing of a Class Claim could serve as a deterrent against the reorganized company. *See Chaparral,* 571 B.R. at 649-50. Assuming the Class Claim is well founded, the Bankruptcy Court reasoned, it is based on an "allegation that Chaparral is

improperly reporting, accounting for, and distributing royalty interest payments to Royalty Interest Owners." *Id*. at 650. Imposing the class claim device could "dissuad[e] the reorganized companies from continuing with the same behavior." *Id.*

Chaparral argues on appeal that "deterrence of the Reorganized Debtors is an inappropriate consideration as a matter of law." (D.I. 24 at 2). "The Class Proof of Claim, which is against the estate, not the Reorganized Debtors, if successful, would only shift shares between creditors rather than impacting the Reorganized Debtors. Moreover any deterrent effect would result from a court interpreting applicable contract provisions, which will already be provided by the individual claims addressing the same provisions." *Id.*

The deterrent effect of the Class Claim, however, was properly considered by the Bankruptcy Court in determining whether to apply Rule 7023. *See In re First Alliance Mortg. Co.*, 269 B.R. 428,446 (C.D. Cal. 2001) (deterrence is an important goal in insolvency cases). "The device [of the class action] still serves a deterrent function by ensuring that wrongdoers bear the costs of their activities." *In re American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988). The factor is properly considered here, where the reorganized Chaparral companies are continuing to operate and are continuing to engage in conduct directly relevant to the allegations in the Class Claim. (CHAP0118, ¶ 3). *See Ephedra*, 329 B.R. at 9 (acknowledging that deterrence may be compelling reason to apply Rule 7023 in "a reorganization where the company continues in business run by the owners and managers who had perpetrated a consumer fraud, or in a liquidation where some equity is returned to the former owners"); *see also In re Mortgage & Realty Trust*, 125 B.R. 575, 581 (C.D. Cal. 1991) ("Deterrence of corporate wrongdoing may also be served by certification of the class in this case. The debtor is continuing in business under the same

management as it had during the period covered by the class claim.  An award of damages to the class would deter this management from future wrongdoing of the sort alleged in the claim").

While deterrence may not be the *determining* factor in applying Bankruptcy Rule 7023, it is within the bounds of consideration for the Bankruptcy Court.  The Bankruptcy Court stated that deterrence was an *additional reason* weighing in favor of applying the rule.  The point that allowance of the Class Claim could deter the reorganized company from engaging in improper conduct relating to the calculation and payment of royalties post-reorganization simply bolstered the Bankruptcy Court's determination.  The Bankruptcy Court's consideration of potential deterrence does not support of finding of abuse of discretion.

## IV.   <u>CONCLUSION</u>

Chaparral has not set forth any grounds demonstrating that the Bankruptcy Court acted outside the bounds of its mandate and abused its discretion.  For the reasons set forth herein, the Memorandum Order is affirmed.  A separate Order shall be entered.